# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 12-CV-719 (JFB)
_____

KENNETH HYNES,

Plaintiff,

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_____

**MEMORANDUM AND ORDER**
June 26, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Kenneth Hynes ("plaintiff" or "Hynes") brings this action, pursuant to 42 U.S.C. § 405(g) of the Social Security Act, challenging the decision of the Commissioner of Social Security ("Commissioner"), dated April 27, 2010, denying plaintiff's application for Disability Insurance Benefits ("DIB"). The Commissioner found that plaintiff was not disabled from September 11, 2001, the alleged onset date, through March 31, 2006, the date last insured. The Commissioner further found that, during the period of alleged disability, plaintiff's residual functional capacity allowed him to engage in the full range of light work, which existed in significant numbers in the national economy. The Commissioner now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, alleging that the Administrative Law Judge ("ALJ") erred by failing to: (1) explain the weight given to the opinion of plaintiff's treating physician; (2) contact plaintiff's treating physician to clarify ambiguities in the record; (3) explain the rationale for the conclusion that plaintiff could perform light work; and (4) inform plaintiff of his right to counsel. Plaintiff also contends that the Appeals Council failed to consider additional evidence that plaintiff submitted upon appeal of the ALJ's determination.

For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is denied but plaintiff's motion to remand is granted. Accordingly, the case is remanded to the ALJ

for further proceedings consistent with this Memorandum and Order. Remand is warranted because the ALJ failed to: (1) explain why he was discounting the opinion of plaintiff's treating physician; (2) adequately develop the record; and (3) inform plaintiff of his right to counsel. In addition, remand is warranted because the Appeals Council failed to explain why it discounted the additional evidence plaintiff submitted from his treating physician.

I. BACKGROUND

A. Facts

The following summary of the relevant facts is based upon the administrative record ("AR") as developed by the ALJ. A more exhaustive recitation of the facts is contained in the parties' submissions to the Court and is not repeated herein.

1. Plaintiff's Work History

Plaintiff was born in 1954 and has a high-school education. (AR at 58, 107.) Plaintiff was a heavy equipment operator and mechanic for approximately 35 years. (*Id.* at 36.) Subsequently, plaintiff was a payloader operator for approximately eight years. (*Id.* at 102.) From January 2001 to September 2001, plaintiff worked as a truck mechanic. (*Id.*) Plaintiff alleges that he became disabled on September 11, 2001. After plaintiff's alleged onset date, plaintiff started his own business as a handyman. (*Id.* at 40-41.) Plaintiff completed some small jobs, but he claims that the work was not steady and that he could not complete any significant jobs due to his disability. (*Id.* at 42.)

2. Medical Evidence During Relevant Period

Dr. John O'Connor first examined plaintiff on December 13, 2002. (*Id.* at 380-81.) Dr. O'Connor noted plaintiff's medical history of diabetes mellitus, hyperlipidemia, and tobacco abuse. (*Id.* at 380.) Dr. O'Conner also assessed coronary artery disease. (*Id.* at 381.) During a follow-up visit on April 7, 2003, plaintiff complained of angina. (*Id.* at 379.)

Plaintiff underwent a carotid sonogram on April 17, 2003, which revealed mild atherosclerotic plaquing in the right and left carotid bulbs, but no significant stenosis. (*Id.* at 494.) The next day, plaintiff underwent an exercise stress test. After exercising for 10 minutes, plaintiff had to stop the test due to chest pain. However, the EKG response and the nuclear perfusion imaging were normal. (*Id.* at 499.) Dr. Mark Saporita, a cardiologist, evaluated plaintiff on April 22, 2003. He noted that plaintiff's cardiac examination showed no abnormalities and that the stress test revealed hypertensive blood pressure response to exercise and normal perfusion imaging. (*Id.* at 498.) Dr. Saporita assessed that plaintiff "probably" had "some element of coronary disease" and had multiple cardiac risk factors, but that he had a "relatively good prognosis" because there were no segmental defects and plaintiff was able to exercise for 10 minutes with a normal EKG response. (*Id.*)

On April 23, 2003, a CT scan revealed neural calcification of the aorta and iliac arteries, consistent with vascular sclerosis. (*Id.* at 469-70.) In addition, a May 1, 2003 chest x-ray revealed degenerative changes of the thoracic spine and no evidence of acute cardiopulmonary disease. (*Id.* at 471.)

During a follow-up appointment with Dr. O'Connor on May 6, 2003, plaintiff complained of fatigue and muscle aches, which Dr. O'Connor indicated might be related to Lipitor. (*Id.* at 378.)

On August 3, 2004, plaintiff experienced swelling of the tongue and Dr. O'Connor sent

2

plaintiff to the emergency room. (*Id.* at 375, 377, 383-86.) The ER doctor determined that plaintiff had massive tongue edema due to the prescription medication Altace. (*Id.* at 386.) The ER doctor also noted previous diagnoses of hypertension and non-insulin dependent diabetes mellitus. (*Id.*) An electrocardiogram revealed normal sinus rhythm and a chest x-ray was normal. (*Id.* at 468, 507.)

A May 16, 2005 carotid artery sonogram revealed mild atherosclerotic thickening and plaquing in the left common carotid artery. (*Id.* at 506.) There was no evidence of flow obstruction in either carotid artery, and antegrade blood flow was demonstrated in both vertebral arteries. (*Id.*) An EKG performed on the same day was normal except for a mildly dilated right atrium. (*Id.* at 505.)

Plaintiff also experienced some degenerative changes of the lower cervical spine. A May 1, 2003 radiological study revealed degenerative changes of the thoracic spine. (*Id.* at 471.) This confirmed an MRI that plaintiff underwent on November 28, 1998. (*Id.* at 612.)

### 3. Medical Evidence After Relevant Period

In February 2009, plaintiff suffered a series of strokes, which resulted in headaches and reduced vision. (*Id.* at 169-235, 250-78, 282-95.) Plaintiff had several follow up visits with Dr. O'Connor regarding his strokes. (*Id.* at 373.)

On February 13, 2009, Dr. Naim Abrar examined plaintiff regarding his type II diabetes. Plaintiff reported that he had diabetes for the past fourteen years. (*Id.* at 279.) Dr. Abrar noted that plaintiff might benefit from insulin therapy, and he prescribed oral medications and blood-sugar monitoring. (*Id.* at 280-81.)

### 4. Medical Source Statements

On May 6, 2009, Dr. O'Connor completed a medical source statement at the request of the Commissioner. Dr. O'Connor stated that plaintiff had suffered two strokes, with current symptoms of partial loss of eyesight, numbness and weakness of the extremities, loss of balance, and forgetfulness. (*Id.* at 240.) Dr. O'Connor also noted that plaintiff suffered from fatigue, but that it was caused more by his stroke than his depression. (*Id.* at 242.) The statement also listed plaintiff's medical history as including diabetes, hypertension, high cholesterol, and coronary artery disease, and Dr. O'Connor noted that he had been treating plaintiff for those conditions since 2002. (*Id.* 241.) Dr. O'Connor concluded that plaintiff was completely disabled and could not perform any work-related activities, but did not specify when he believed plaintiff first became disabled. (*Id.* at 244.)

Dr. O'Connor also submitted a letter dated August 18, 2009. The letter states that plaintiff suffered four strokes in February and March 2009, causing short term memory loss, loss of vision and balance, and fatigue. Dr. O'Connor also noted that plaintiff had suffered from depression for several years, "but was in denial and refused treatment." (*Id.* at 354.)

Dr. Louis J. Avvento, who first saw plaintiff when he was hospitalized for a stroke in February 2009, completed a mental health medical source statement on June 4, 2009 at the request of the Commissioner. Dr. Avvento disclosed that he had a personal history with plaintiff because plaintiff's wife was his employee (*id.* at 301), but also that he had been plaintiff's physician for "many years" (*id.* at 310).[1] Dr. Avvento noted that plaintiff

---

[1] It is not clear from the record how Dr. Avvento could note that he first saw plaintiff in February 2009 while

3

had a history of depression, mood swings, and withdrawal, but that plaintiff had refused to seek treatment. Dr. Avvento stated that depression was the primary cause of plaintiff's fatigue prior to the strokes. Dr. Avvento also noted that plaintiff was able to independently perform most activities of daily living, but could not drive or perform gainful employment in his field. (*Id.* at 300-05.)

Dr. Avvento submitted a second letter on March 4, 2010, stating that plaintiff's "history includes lengthy bouts of depression since 2001, initially declining medication but recently accepting treatment with some control of symptoms and improvement in the depressive events." (*Id.* at 365.)

At the request of the Commissioner, M. Graff, Ph.D., completed a psychiatric review technique form on July 7, 2009. Dr. Graff reviewed the medical evidence in the record, including the medical source statement of Dr. Avvento, and concluded that there was "insufficient evidence" to establish a medically determinable impairment prior to plaintiff's date last insured. (*Id.* at 331; *see also id.* at 343.)

### 5. Plaintiff's Testimony

At the March 11, 2010 hearing in front of the ALJ, plaintiff primarily testified regarding his depression. Plaintiff stated that, approximately three or four times a year, he "used to spend a month in bed" and would not "leave [his] room for a month." (*Id.* at 41.) Plaintiff stated that his month-long bouts of depression would end very suddenly, but it would then take a significant amount of time to repair his familial relationships due to the difficulty of spending a month away from his family. (*Id.* at 43.) Plaintiff indicated that depression runs in his family. (*Id.* at 52-53.) Plaintiff testified that he did not seek treatment because he "was too proud." (*Id.* at 41.) Plaintiff stated that Dr. O'Connor knew about his difficulties, but never recommended that he seek psychological treatment. (*Id.* at 46.) Plaintiff's wife indicated at the hearing that he sought treatment one time when he was required to see a counselor by his employer. (*Id.* at 52.)

Plaintiff testified that during his insured period, when he did leave his room, he was able to drive and help with some household activities, such as cooking and cleaning. (*Id.* at 48-49.) However, plaintiff stated that he could not socialize and did not even attend some weddings and funerals. (*Id.* at 49.)

### 6. Right to Counsel

Prior to the hearing, plaintiff received notification from the Commissioner that he could "have a friend, lawyer, or someone else help you." (*Id.* at 61.) The notice also stated that "[t]here are groups that can help you find a lawyer or give you free legal services if you qualify." (*Id.*) In the Notice of Hearing plaintiff was sent on February 12, 2010, the Commissioner informed plaintiff that "[i]f you want to have a representative, please find one right away." (*Id.* at 68.)

At the hearing, plaintiff was not informed of his right to counsel.[2] At the beginning of the hearing, the ALJ asked plaintiff: "Mr. Hynes, you're represented by Miss Hynes?" and plaintiff responded in the affirmative. (*Id.* at 32.) The ALJ asked plaintiff's wife if she had reviewed the record. (*Id.*) The ALJ also informed plaintiff's wife of the definition of "disabled" and that plaintiff's disability would need to be proved as of March 30, 2006, the

---

also stating that he had been plaintiff's physician for "many years."

[2] The ALJ's decision erroneously states that "[a]lthough informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative." (AR at 20.) The Commissioner concedes that this statement is incorrect. (Comm'r Reply at 4.)

4

date last insured. (*Id.* at 34.) But again, at no point did the ALJ inform the plaintiff that he had the right to have an attorney present for the hearing.

### 7. The ALJ's Decision

The ALJ determined that plaintiff was not disabled under the Social Security Act through March 31, 2006. (*Id.* at 26.) The ALJ concluded that plaintiff's diabetes mellitus and hypertension were severe impairments, but that plaintiff's depression "did not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities and was therefore non-severe." (*Id.* at 22.)

The ALJ found that there was no evidence of a disabling mental impairment because "there is no mention of depression" in "the voluminous notes of treatment from Dr. O'Connor." (*Id.* at 24.) The ALJ also stated that plaintiff "did not complain of any symptoms related to depression, nor was he prescribed any medications for depression until 2009, according to his wife's statement." (*Id.*)[3] The ALJ stated:

> While third parties including the claimant's wife and sister allege that the claimant was severely limited in his activity during this period due to depression, without any evidence of the condition from a medical source, it is impossible to conclude the level to which he was limited, the length of the impairment, or even to verify its existence. Therefore, even giving the claimant the benefit of the doubt, the undersigned must conclude that while depression may have been present in some capacity, it was not a "severe" impairment, in that there is no evidence that it caused more than mild, if any, limitations.

(*Id.* at 25 (internal citations omitted).) Therefore, the ALJ concluded that plaintiff could perform the full range of light work during the relevant time period. (*Id.*) Because there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, the ALJ concluded that plaintiff was not disabled. (*Id.* at 25-26.)

### 8. Appeal and New Evidence

Subsequent to the ALJ's decision, Dr. O'Connor submitted a diabetes mellitus residual functional capacity questionnaire dated June 1, 2010. Dr. O'Connor indicated diagnoses of diabetes mellitus, hypertension, and strokes, and listed plaintiff's various symptoms. (*Id.* at 615.) Dr. O'Connor stated that plaintiff also suffered from depression and anxiety, which contributed to the severity of his symptoms. (*Id.*) The doctor assessed that plaintiff had numerous limitations in his ability to sit, stand, and lift, and that plaintiff would likely need to be absent from work more than four days per month due to his limitations. (*Id.* at 615-18.) On June 7, 2010, Dr. O'Connor provided a letter stating that the limitations described in his June 1, 2010 report dated back "prior to March 31, 2006." (*Id.* at 619.)

Plaintiff appealed the ALJ's decision. The Social Security Administration's Appeals Council denied the request for review, stating that it "considered the reasons you disagree with the decision and the additional evidence"

---

[3] The Court notes that the source the ALJ cites for this proposition contradicts the ALJ's statement. Plaintiff's wife stated in a letter to the Commissioner prior to the hearing that her "husband had suffered these bouts [of depression] back as far as the 1990's" and that "the depression worsened" in 2000. (AR at 143.) It appears that the ALJ may have meant that plaintiff never complained to a doctor regarding his depression until 2009. As discussed *infra*, the ALJ should recontact Dr. O'Connor on remand if the information in the record is insufficient to determine whether plaintiff discussed his symptoms of depression with his physician prior to the date last insured.

that plaintiff submitted. (*Id.* at 1.) The Council concluded that the additional information "does not provide a basis for changing the [ALJ's] decision," but the decision does not state why the Council discounted the new information provided by Dr. O'Connor. (*Id.* at 2.)

### B. Procedural History

On February 26, 2009 plaintiff filed for DIB, alleging disability since September 11, 2001. (*Id.* at 93-94.) The application was denied. (*Id.* at 59-62.) Plaintiff requested a hearing, and a hearing was held before an ALJ on March 11, 2010. (*Id.* at 30-57.) On April 27, 2010, the ALJ issued a written decision finding that plaintiff was not disabled as of the last insured date of March 31, 2006. (*Id.* at 20-26.) Plaintiff requested review of the ALJ's decision, and submitted additional evidence as discussed *supra*. The Appeals Council denied plaintiff's request for review on December 19, 2011. (*Id.* at 1-5.)

Plaintiff filed this action on February 14, 2012. The Commissioner filed a motion for judgment on the pleadings on July 16, 2012. Plaintiff filed a cross-motion for judgment on the pleadings on August 9, 2012. Defendant filed a memorandum in further support of its motion for judgment on the pleadings and in opposition to plaintiff's cross-motion on August 27, 2012. The Court has carefully considered all of the submissions of the parties.

## II. STANDARD OF REVIEW

A district court may only set aside a determination by an ALJ that is "based upon legal error" or "not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted); *see also Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997). Furthermore, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (citation and internal quotation marks omitted); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

## III. DISCUSSION

### A. Disability Determination

#### 1. Legal Standard

A claimant is entitled to disability benefits if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "'(1) objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Id*. (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

### 2. Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is the result of legal error. Specifically, plaintiff argues that the ALJ erred by failing to: (1) explain the weight given to the opinion of plaintiff's treating physician; (2) contact plaintiff's treating physician to explain ambiguities in the record; and (3) explain the rationale for the conclusion that plaintiff could perform light work. Plaintiff also contends that the Appeals Council failed to consider additional evidence that plaintiff submitted upon appeal of the ALJ's determination.

As set forth below, this Court concludes that this case shall be remanded to the Commissioner because the ALJ failed to: (1) give sufficient reasons for his decision not to give controlling weight to the medical opinion of Dr O'Connor, and (2) contact Dr. O'Connor for clarification on the relevant time period and severity of plaintiff's depression. Additionally, the Court finds that the Appeals Council erred when it failed to explain why Dr. O'Connor's additional submissions did not warrant review of the ALJ's decision.

### a. ALJ's Decision

#### i. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial work activity is work activity that involves doing significant physical or mental activities, 20 C.F.R.

7

§ 404.1572(a), and gainful work activity is work usually done for pay or profit, 20 C.F.R. § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. In this case, the ALJ determined that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of September 11, 2001. (AR at 22.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

### ii.   Severe Impairment

If the claimant is not employed, the ALJ then determines whether the claimant has a "severe impairment" that limits his capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez*, 77 F.3d at 46. The ALJ in this case found that plaintiff had severe impairments of diabetes mellitus and hypertension. (AR at 22.)

The ALJ also determined that plaintiff had a medically determinable impairment of depression, but it did not cause more than minimal limitation in plaintiff's abilities to perform work functions, and therefore, was non-severe. (*Id.*) In evaluating mental disorders, the Commissioner must consider four broad functional areas in order to determine a claimant's degree of functional limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* § 404.1520a(d)(1). The ALJ stated that he considered the four functional areas set forth in the regulations, and that because there is "no medical evidence in the record prior to the date last insured, . . . no limitations can be established in any of the functional areas . . . ." (AR at 22.)

The Commissioner's determination is the result of legal error. As discussed more fully *infra*, the ALJ on remand must consider the evidence that plaintiff submitted to the Appeals Council that the ALJ did not have access to, specifically, Dr. O'Connor's determination that plaintiff exhibited symptoms of depression during the insured period. If the ALJ still finds that plaintiff's depression was not severe, the ALJ must fully explain why he is discounting Dr. O'Connor's opinion as set forth in the regulations discussed *infra*. In addition, if the ALJ believes that the record is incomplete regarding plaintiff's depression, the ALJ must contact Dr. O'Connor to affirmatively develop the record.

### iii.   Listed Impairment

If the claimant has a severe impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). In this case, the ALJ found that plaintiff's impairments did not meet any of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 23.) Substantial evidence supports this finding and plaintiff does not challenge its correctness.

### iv. Residual Functional Capacity

If the claimant does not have a listed impairment, the ALJ determines the claimant's residual functional capacity, in

8

light of the relevant medical and other evidence in the claimant's record, in order to determine the claimant's ability to perform his past relevant work. 20 C.F.R. § 404.1520(e). The ALJ then compares the claimant's residual functional capacity to the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the ability to perform his past relevant work, he is not disabled. *Id.* If the claimant is unable to perform his past work, he is still not disabled if he "can make an adjustment to other work." *Id.* § 404.1520(g).

In this case, the ALJ found that plaintiff was not physically able to perform his past work. (AR at 25.) However, the ALJ determined that plaintiff had the residual functional capacity to perform the full range of light work. (*Id.* at 23.) Plaintiff challenges the ALJ's residual functional capacity determination, arguing that Dr. O'Connor's treatment records "do not address the amount of weight the plaintiff was able to lift" or the "amount of time that the plaintiff could sit or stand" prior to March 31, 2006. (Pl.'s Mem. at 17.)

The Court finds that the Commissioner's determination that plaintiff had the residual functional capacity to perform the full range of light work is the result of legal error because, as discussed *infra*, the Appeals Council did not explain why it disregarded plaintiff's new evidence from Dr. O'Connor and because the ALJ did not affirmatively develop the record regarding plaintiff's depression.

v. Other Work

At step five, if the claimant is unable to perform his past relevant work, the ALJ determines whether the claimant is capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the SSA has the burden of demonstrating that other jobs exist in significant numbers in the national economy that claimant can perform. *Id.* § 404.1560(c); *see also Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998).

In this case, the ALJ considered plaintiff's age, education, work experience, and residual functional capacity, and found that prior to March 31, 2006, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AR at 25.)

b. Treating Physician Rule

i. Legal Standard

The Commissioner must give special evidentiary weight to the opinion of a treating physician. *See Clark*, 143 F.3d at 118. The "treating physical rule," as it is known, "mandates that the medical opinion of a claimant's treating physician [be] given controlling weight if it is well supported by the medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Clark*, 143 F.3d at 118. The rule, as set forth in the regulations, provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of

9

your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

Furthermore, while treating physicians may share their opinion concerning a patient's inability to work and the severity of disability, the ultimate decision of whether an individual is disabled is "reserved to the Commissioner." *Id.* § 404.1527(d)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.")

If the opinion of the treating physician as to the nature and severity of the impairment is not given controlling weight, the Commissioner must apply various factors to decide how much weight to give the opinion. *See Shaw*, 221 F.3d at 134; *Clark*, 143 F.3d at 118. These factors include: (i) the frequency of examination and length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. *See Clark*, 143 F.3d at 118; 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2). When the Commissioner chooses not to give the treating physician's opinion controlling weight, he must "give good reasons in [his] notice of determination or decision for the weight [he] gives [the claimant's] treating source's opinion." 20 C.F.R § 404.1527(c)(2); *see also*, *Perez v. Astrue*, No. 07-CV-958, 2009 WL 2496585, at *8 (E.D.N.Y Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."); *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y 2006) ("Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources." (citation and internal quotation marks omitted)). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

ii. Analysis

In concluding that plaintiff's depression did not render him disabled, the ALJ described the absence of any mention of depression in Dr. O'Connor's treating notes, as well as plaintiff's ability to perform some household tasks and his failure to seek medical treatment. (AR at 24-25.) As for plaintiff's other ailments, the ALJ concluded that plaintiff was not disabled because Dr. O'Connor "gave [plaintiff] a good prognosis and did not place any limitations on his functioning." (*Id.* at 25.)

Dr. O'Connor stated that plaintiff was "completely disabled." (*Id.* at 244.) Although the ALJ was not required to determine that plaintiff was disabled solely because of Dr. O'Connor's conclusion, the ALJ failed to even acknowledge Dr. O'Connor's assessment that plaintiff was disabled and explain the rationale for not crediting the doctor's opinion, as required by the case law and statutes cited *supra*. *See, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140-41 (2d Cir. 2004) (remanding case because ALJ "did not give sufficient reasons explaining how, and on the basis of what factors, [the treating physician's] opinion was weighed," and

10

stating that "we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion" (citation and internal quotation marks omitted)); *Featherly v. Astrue*, 793 F. Supp. 2d 627, 632 (W.D.N.Y. 2011) (remanding case when ALJ's opinion contained only a "conclusory discussion" of the reasons for assigning certain weight to two of plaintiff's treating physicians and failed to mention the weight assigned to the opinions of other treating physicians).

It appears that the ALJ may have discounted Dr. O'Connor's opinion because he found that "[i]n the voluminous treating notes from Dr. O'Connor, there is no mention of depression." (AR at 24 (internal citation omitted).) However, the ALJ cannot reject a treating physician's opinion on the sole basis that it conflicts with the physician's own clinical findings. *See Balsamo*, 142 F.3d at 80. In addition, as discussed more fully *infra*, if the ALJ "perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998).

The ALJ's failure to give controlling weight to Dr. O'Connor's opinion could also have been due to the doctor's failure to delineate the relevant time period of plaintiff's disability and state whether plaintiff was disabled due to his depression and other disabilities prior to his strokes. However, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history." *Rosa*, 168 F.3d at 79; *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record, regardless of whether the claimant is represented by legal counsel."); *Jones v. Apfel*, 66 F. Supp. 2d 518, 523 (S.D.N.Y. 1999) ("Under the regulations, the Secretary must develop the plaintiff's 'complete medical history,' and make 'every reasonable effort' to help the plaintiff get the required medical reports." (quoting 20 C.F.R. § 404.1512(d))). "When the claimant appears *pro se*, as was the case here, the ALJ has a heightened duty to develop the administrative record prior to making a determination." *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002).

In addition to having an obligation to develop the record generally, the ALJ was required to recontact plaintiff's treating physician if the evidence from the treating physician was "inadequate for [the Commissioner] to determine whether [an individual was] disabled." 20 C.F.R. § 404.1512(e) (2010).[4]

The Court finds that Dr. O'Connor's May 6, 2009 opinion that plaintiff is disabled and August 18, 2009 opinion that plaintiff suffers from depression are unclear because they do not specify the time period of plaintiff's disability. As Dr. O'Connor treated plaintiff both during and after the relevant time period, and Dr. O'Connor clearly knew of plaintiff's depression, clarification would have assisted the ALJ in making the disability determination. *See Papadopoulos v. Astrue*, No. 10 Civ. 7980, 2011 WL 5244942, at *8

---

[4] The Commissioner modified the regulations in 2012 by removing the provision that *required* the agency to recontact a treating physician when the evidence in the record was inadequate to determine whether a claimant was disabled. *See* 20 C.F.R. § 404.1512 (2012). However, the Commissioner concedes that the Court must apply the regulations in effect at the time of plaintiff's hearing on March 11, 2010. (*See* Comm'r Reply at 3 n.1.)

11

(S.D.N.Y. Nov. 2, 2011) ("Because 'further findings' would so plainly help to assure the proper disposition of [plaintiff's] claim, remand is appropriate in this case." (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996))). In light of the ALJ's affirmative duty to develop the record, the limited medical evidence regarding plaintiff's depression, plaintiff's *pro se* status, and the unclear nature of Dr. O'Connor's original opinions regarding plaintiff's disability, the ALJ had a duty to recontact Dr. O'Connor for clarification. *See Crysler v. Astrue*, 563 F. Supp. 2d 418, 433 (N.D.N.Y. 2008) (Adopting Report and Recommendation) ("[B]ecause plaintiff was proceeding *pro se*, [the ALJ] was under an enhanced duty to ensure a complete record and, in this case, to contact [plaintiff's physicians] in order to ensure that all of the facts relevant to his RFC determination were sufficiently developed and considered.").

Following the ALJ's decision, Dr. O'Connor submitted two additional assessments of plaintiff's disability, one of which clarified that Dr. O'Connor believed plaintiff was disabled during the relevant period, prior to his strokes. The Appeals Council denied review without mentioning this significant new evidence. "When the Appeals Council denies review after considering new evidence, [the court should] simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 46.

The Court finds that not only should the ALJ have more fully developed the record by recontacting Dr. O'Connor, but that once Dr. O'Connor submitted additional evidence, that the Appeals Council failed to adequately explain its reasons for denying review. The "Appeals Council must give good reasons for the weight it assigns to a plaintiff's treating physician's opinion" and failure to consider new and material evidence is grounds for remand. *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) (Adopting Report and Recommendation) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (remanding case to Appeals Council when it failed to explain why plaintiff's treating physician's finding of disability was rejected)); *Richardson v. Apfel*, 44 F. Supp. 2d 556, 564 (S.D.N.Y. 1999) ("Absent a valid explanation as to why the Appeals Council failed to seek out the clinical or diagnostic findings it required . . . the court is not satisfied that the Commissioner has fulfilled his affirmative obligation under the Social Security regulations and Second Circuit jurisprudence.").

Therefore, having reviewed the entire record, including the ALJ's decision, plaintiff's additional evidence that was submitted to the Appeals Council, and the Appeals Council decision, the Court finds that the Commissioner made legal errors because both the ALJ and the Appeals Council failed to adequately explain why it discounted the opinions of plaintiff's treating physician. On remand, the ALJ must fully consider the opinions of Dr. O'Connor. If the ALJ chooses not to give controlling weight to Dr. O'Connor's opinion, the ALJ must fully explain his decision, as required by the cited case law and regulations.

Remand in this case is also warranted because, as stated *supra*, the ALJ failed to adequately develop the record. "Nothing in the record here indicates that the ALJ even attempted to find witnesses to testify on behalf of plaintiff," *Mann v. Chater*, 95 CIV. 2997, 1997 WL 363592, at *7 (S.D.N.Y. June 30, 1997), or that the ALJ considered recontacting Dr. O'Connor in light of his ambiguous submissions. The ALJ failed in his "duty to adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts [were] sufficiently developed

and considered." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (citation and internal quotation marks omitted). The ALJ should have, at the very least, contacted Dr. O'Connor to discern: (1) the time period of plaintiff's disability, (2) the point at which Dr. O'Connor first believed that plaintiff began suffering from depression, and (3) why Dr. O'Connor's notes did not indicate any discussion of depression or psychological treatment during the relevant time period. Accordingly, on remand, the ALJ must assist plaintiff in developing the record, including by contacting Dr. O'Connor if the ALJ believes that Dr. O'Connor's treatment notes and submissions are inadequate to determine whether plaintiff was disabled.

B.   Right to Counsel

In addition to the failure to affirmatively develop the record and explain why Dr. O'Connor's opinion was discounted, the ALJ failed to advise plaintiff at the hearing of his right to counsel. Accordingly, remand is warranted on this additional ground.

"Although a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to be represented should she choose to obtain counsel." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 406 and 20 C.F.R. § 404.1705). The law requires the Commissioner to notify the claimant "in writing . . . of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security . . . [and] also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c). However, "at the hearing itself, 'the ALJ must ensure that the claimant is aware of [her] right [to counsel].'" *Lamay*, 562 F.3d at 507 (quoting *Robinson v. Sec'y of Health & Human Servs.*, 733 F.2d 255, 257 (2d Cir.1984)) (alterations in *Lamay*); *see also Martino ex rel. C.P. v. Astrue*, 09-CIV-6479, 2012 WL 1506058, at *9 n.1 (S.D.N.Y. Apr. 27, 2012) (stating that the Second Circuit "reaffirmed in *Lamay* [] that the ALJ must ensure that claimant is aware of his or her right to counsel"). Although the issue has never been directly decided by the Circuit, courts have concluded that "[r]emand for lack of representation is proper only if the lack of counsel resulted in prejudice to the claimant or unfairness in the proceeding." *Flores v. Astrue*, 08 CIV. 2810, 2009 WL 1562854, at *8 (S.D.N.Y. May 27, 2009); *see also Robinson*, 733 F.2d at 258 ("[T]he failure of the ALJ to develop the record fully and to afford [plaintiff], who was unrepresented by counsel, an adequate opportunity to do so, denied [plaintiff] a fair hearing."); *Santana v. Apfel*, 44 F. Supp. 2d 482, 484 (E.D.N.Y. 1999) ("The absence of adequate notice of plaintiff's right to counsel clearly had a prejudicial effect on the fairness of the hearing.").

In this case, the ALJ clearly did not inform plaintiff at the hearing of his right to counsel. However, the Commissioner argues that remand on this ground is not warranted because: (1) the ALJ did not inform plaintiff of his right to representation because plaintiff's wife was his representative; (2) the ALJ ensured that plaintiff's wife understood the disability claims process and the burden of proof; and (3) plaintiff has not alleged that he was prejudiced by his proceeding without an attorney. (Comm'r Reply at 5-7.)

The Commissioner's first two arguments are erroneous. The case law does not require an ALJ to inform a claimant of the right to be represented at a hearing, but instead to the right to be represented "by counsel." *Robinson*, 733 F.2d at 257; *see also Lamay*, 562 F.3d at 509 (holding that claimant was adequately informed of right to counsel when

13

ALJ informed her that she could "'either . . . have a postponement of the hearing and get a *lawyer* or . . . [go] forward with the hearing today. It's your choice.'" (alterations in original and emphasis added)). The ALJ's failure to inform plaintiff of his right to counsel because plaintiff was represented by his wife and the ALJ explained to her some basic tenets of social security law does not satisfy the requirement. *See Holliday v. Astrue*, 05-CV-1826, 2009 WL 1292707, at *10-11 (E.D.N.Y. May 5, 2009) (finding that claimant was not adequately notified of her right to counsel when "ALJ made no effort to confirm that [claimant] actually understood his oblique reference to legal counsel as 'a representative'"). Furthermore, as discussed *supra*, plaintiff was prejudiced by his failure to be represented by an attorney. When a "claimant is handicapped by lack of counsel, . . . the courts have a duty to make a searching investigation of the record." *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972) (citation and internal quotation marks omitted). Having fully reviewed the record, the Court finds that an attorney would have assisted plaintiff in developing the record by highlighting instances in Dr. O'Connor's statements regarding plaintiff's depression, and by possibly calling Dr. O'Connor or other individuals to testify as witnesses.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is denied but plaintiff's motion to remand is granted. The case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order. Specifically, on remand, the ALJ must consider all of Dr. O'Connor's submissions regarding plaintiff's disability (including those not available to him at the time he rendered his decision), and if the ALJ chooses to discount Dr. O'Connor's opinion, he must explain in detail his decision as outlined in the case law and the regulations. The ALJ must also assist plaintiff in developing the record if the submissions are inadequate to determine when plaintiff was depressed, how severe his symptoms were, and whether plaintiff was disabled and could not work. In addition, if plaintiff chooses to appear without counsel at the hearing, the ALJ must fully inform plaintiff of his right to counsel.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date:   June 26, 2013
        Central Islip, NY

\* \* \*

Plaintiff is represented Michael Brangan, Sullivan & Kehoe, 44 Main Street, Kings Park, NY, 11754 The attorney for defendant is Loretta E. Lynch, United States Attorney, Eastern District of New York, by Kenneth M. Abell**,** 271 Cadman Plaza East, 7th Floor, Brooklyn, NY 11201.

14